## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

----------------------------------------------------------

SHIVA STEIN,                                        :
                                                    :
       Plaintiff,                        :  Civil Action No. _____
                                                    :
v.                                                  :  **COMPLAINT FOR VIOLATIONS OF**
                                                    :  **SECTIONS 14(a) AND 20(a) OF THE**
INNERWORKINGS, INC., JACK M.                        :  **SECURITIES EXCHANGE ACT OF**
GREENBERG, CHARLES K. BOBRINSKOY,                   :  **1934**
LINDSAY Y. CORBY, DAVID FISHER,                     :
ADAM J. GUTSTEIN, JULIE M. HOWARD,                  :  **JURY TRIAL DEMANDED**
KIRT P. KARROS, RICH STODDART, and                  :
MARC ZENNER,                                        :
                                                    :
       Defendants.                       :

----------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against InnerWorkings, Inc. ("InnerWorkings or the "Company") and the members of InnerWorkings' board of directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of InnerWorkings by HH Global Limited, a company registered in England and Wales ("HH Global"), and HH Global's affiliates.

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on August 10, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Proxy

Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Project Idaho Merger Sub, Inc. ("Merger Sub") will merge with and into InnerWorkings with InnerWorkings surviving the merger and becoming an wholly-owned subsidiary of HH Global (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each InnerWorkings' common share issued and outstanding will be converted into the right to receive $3.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked InnerWorkings' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Citigroup Global Markets Inc. ("Citi"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to InnerWorkings' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because InnerWorkings in incorporated in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of InnerWorkings' common stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Jack M. Greenberg has served as a member of the Board since 2005 and as Chairman of the Board since June 2010.

11.      Individual Defendant Charles K. Bobrinskoy has served as a member of the Board since August 2008.

12.      Individual Defendant Lindsay Y. Corby has served as a member of the Board since July 2018.

13.      Individual Defendant David Fisher has served as a member of the Board since November 2011.

14.     Individual Defendant Adam J. Gutstein has served as a member of the Board since October 2018.

15.     Individual Defendant Julie M. Howard has served as a member of the Board since October 2012.

16.     Individual Defendant Kirt P. Karros has served as a member of the Board since August 2019.

17.     Individual Defendant Rich Stoddart has served as a member of the Board since 2014 and is the Company's Chief Executive Officer.

18.     Individual Defendant Mark Zenner has served as a member of the Board since August 2019.

19.     Defendant InnerWorkings is incorporated in Delaware and maintains its principal offices at 203 North LaSalle Street, Suite 1800, Chicago, Illinois 60601.   The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "INWK."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     __The Proposed Transaction__

22.     InnerWorkings provides marketing execution solutions in the United States, Canada, the United Kingdom, continental Europe, the Middle East, Africa, Asia, Mexico, Central America, and South America.   The Company's software applications and databases create an integrated solution that stores, analyzes, and tracks the production capabilities of its supplier network, as well as detailed pricing data.   The Company offers outsourced print

management solutions that encompass the design, sourcing, and delivery of printed marketing materials, including direct mail, in-store signage, and marketing collateral; and outsourced solutions for the design, sourcing, and delivery of branded merchandise and product packaging. The Company also assists clients with the management of events, promotions spending, and related procurement needs; and designs, sources, and installs point of sale displays, permanent retail fixtures, and store design, as well as offers on-site outsourced creative studio and digital marketing services.  In addition, it provides fulfillment and logistics services, such as kitting and assembly, inventory management, and pre-sorting postage.  Further, the Company offers creative services comprising copywriting, graphics and Website design, identity work and marketing collateral development, and image and print-ready page processing and proofing capability services.  It serves corporate clients in a range of industries, including retail, financial services, hospitality, consumer packaged goods, non-profits, healthcare, pharmaceuticals, food and beverage, broadcasting and cable, and transportation.  The Company was founded in 2001 and is headquartered in Chicago, Illinois.

23.     On July 16, 2020, InnerWorkings announced that they had entered into the Proposed Transaction:

> LONDON & CHICAGO--(BUSINESS WIRE)--InnerWorkings, Inc. (NASDAQ: INWK) ("InnerWorkings") and HH Global Group Limited ("HH Global") today announced that they have signed a definitive agreement to combine operations. Under the terms of the agreement, HH Global will acquire InnerWorkings for $3.00 per share in an all-cash transaction representing approximately $177 million in equity value. This represents a premium of 127% to the closing price, and a premium of 104% to the 90-day volume weighted average price as of July 15, 2020. The transaction has been unanimously approved by the Boards of Directors of both companies.
>
> "Over the past several months, we've been taking actions to put InnerWorkings in the best position to weather the challenging

environment in which we're operating," said Rich Stoddart, Chief Executive Officer of InnerWorkings. "In these times of significant economic uncertainty, the Board of Directors and management determined to undertake a comprehensive process to preserve and enhance value for shareholders. After exploring a range of financing and strategic alternatives, and implementing meaningful cost saving measures in response to the COVID-19 pandemic, we're confident this combination represents the best path forward for our shareholders and InnerWorkings. In addition to delivering an immediate cash premium to our shareholders, the combination will create a company with a stronger balance sheet and will enhance our ability to accelerate our transformation and serve our client base."

**Strategic Rationale**

The combination will result in a world-class marketing engineering and execution firm that is well-positioned to serve global clients seeking innovative, end-to-end marketing solutions that lower costs and improve brand consistency, visibility, sustainability and speed to market. With complementary offerings and capabilities, InnerWorkings' leading North American position and HH Global's strong leadership presence in EMEA and APAC, the combined company will operate with global reach and scale, maintaining the agility and client-focused execution that is core to both InnerWorkings and HH Global's strategic approach.

Together, the two companies will have a stronger operating model and balance sheet and will be well-positioned to continue InnerWorkings' transformation and to build and maintain long-term client relationships as a true first-choice partner for leading brands. In addition, the combined company will benefit from the support of funds managed or advised by Blackstone Tactical Opportunities, an existing strategic minority equity investor in HH Global.

**Additional Transaction Details**

Under the terms of the merger agreement, HH Global will acquire all of the outstanding shares of InnerWorkings common stock for $3.00 per share in cash which represents a premium of 127% to the closing price and a premium of 104% to the 90-day volume weighted average price as of July 15, 2020.

The transaction is subject to customary closing conditions, including approval by InnerWorkings' shareholders and receipt of

certain regulatory approvals, and is expected to be completed before the end of the fourth quarter of 2020.

Citigroup Global Markets Inc. is serving as exclusive financial advisor to InnerWorkings and Sidley Austin LLP is serving as legal counsel. Moelis & Company LLC is acting as HH Global's exclusive financial advisor and Kirkland & Ellis LLP is serving as legal counsel.

24.    The Board has unanimously approved the Proposed Transaction.  It is therefore imperative that InnerWorkings' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    <u>The Materially Incomplete and Misleading Proxy Statement</u>**

25.    On August 10, 2020, InnerWorkings filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning InnerWorkings Financial Projections*

26.    The Proxy Statement fails to provide material information concerning financial projections by InnerWorkings' management and relied upon by Citi in its analysis.  The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them

to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that InnerWorkings' management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.    First, the Proxy Statement omits the projections prepared in February 2020, which represented the Company's projections for pre-COVID figures.

28.    Second, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric Adjusted EBITDA, but fails to provide line items used to calculate this metric and/or a reconciliation of this non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

29.    When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.    The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

32.     With respect to Citi's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the terminal values calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 13.0% to 15.2% and 15.7% to 18.8% reflecting the potential for a higher cost of capital reflective of the post-global COVID-19 pandemic; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 3.0% to 4.0%; and (iv) the Company's terminal year unlevered, after-tax free cash flows.

33.     With respect to Citi's *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose (i) the individual multiples and metrics for the transactions

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

observed by Citi in the analysis; and (ii) the inputs and assumptions underlying the selection of the Adjusted EBITDA Multiples ranging from 4.6x to 5.4x.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analysis that were prepared by Citi and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of InnerWorkings within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of InnerWorkings, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of InnerWorkings, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of InnerWorkings, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at

issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 20, 2020

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*